**87 So.2d 122**

**ZENITH CONSTRUCTION CO., Inc.**

v.

**SOUTHERN CONSTRUCTION CORPORATION et al.**

**No. 42307.**

March 26, 1956.

Patin & Patin, Lake Charles, McDonald & Buchler, Metairie, for defendant-appellant.

Miazza & Drury, New Orleans, for plaintiff-appellee.

HAWTHORNE, Justice.

Zenith Construction Co., Inc., instituted this suit against Southern Construction Corportion to recover $6,703.40, the amount allegedly expended by Zenith in repairing a break in a sewer line in the Parish of Jefferson. After trial on the merits there was judgment in favor of plaintiff in the amount prayed for, and from this judgment the defendant appealed.[1]

On August 28, 1951, the Board of Supervisors of Sewerage District No. 2, Parish of Jefferson, State of Louisiana, entered into a written contract with Southern Construction Corporation for the laying, according to specifications furnished by the

---

1. Joined as defendant in this case was the Houston Fire & Casualty Insurance Company, Southern Construction Corporation's surety, but the suit against the surety was dismissed on exception of no cause of action, and from this dismissal no appeal was taken.

board's engineers, of a sanitary sewer system in that sewerage district, to consist of approximately 34 miles of lateral sewers, manholes, etc. Southern executed a bond with Houston Fire & Casualty Insurance Company as surety in the sum of $1,087,116 for the faithful performance of the contract and for the payment of all persons performing labor and furnishing materials, etc. According to the specifications the amount of the surety bond had to be equal to 100 per cent of the contract price. Southern began work on the sewer system pursuant to this contract, but after only a small amount of the work had been done Southern assigned to Zenith Construction Co., Inc., all of its "rights, obligations and duties" under the sewer contract, warranting to Zenith "the validity and good standing of said contract". Under this assignment Southern was to retain all sums which had been paid to it by the sewerage district for work performed under the contract, and also was to receive payment for certain additional work completed for which it had not been paid, minus 10 per cent which was withheld by the board. For the faithful performance of this contract of assignment and for the payment of laborers, materials, etc., Southern gave its bond to Zenith with the Houston Fire & Casualty Insurance Company as surety in the sum of $72,064.49, which evidently represented the sum paid to Southern by the board for the work which Southern had completed under the contract.

After this assignment was approved by the board of supervisors of the sewerage district in January, 1952, Zenith stepped into Southern's shoes and completed the construction of the sewer system. However, about May 1, 1953, before the work had been finally accepted by the sewerage district, a break occurred in 18 feet of sewer pipe which had been laid by Southern prior to the assignment. The consulting engineer for the board of supervisors of the sewerage district immediately directed Zenith to repair this break, and Zenith in turn called upon Southern to do this work. Upon Southern's denial of responsibility Zenith made the repairs itself. This suit is to recover the alleged cost of these repairs.

To Zenith's petition in these proceedings Southern filed an exception of no cause of action, which was overruled by the trial judge. In this court Southern urges its exception of no cause of action on the ground that there was no warranty of the work already done in its assignment of the sewer contract to Zenith, either express or implied, and that lacking warranty Zenith has no possible grounds for this suit.

We note that the act of assignment does not mention any monetary consideration to be paid to Southern for the assignment of the sewer contract. Apparently Southern in making this assignment desired to be relieved of all its duties under the contract, and Zenith was willing to assume these obligations in the expectation of making a profit on the work, of which, as we have

said before, very little had at that time been done. Under these circumstances the exception filed by Southern may be valid. However, it is unnecessary for us to pass upon this exception since we have concluded that on the merits Zenith has not proven its case and is not entitled to recover in this suit.

For the purpose of making the necessary repairs the concrete sewer pipe which had been laid by Southern approximately 11 or 12 feet below the surface of the ground was excavated. According to plaintiff's testimony the pipe had been broken by pressure from a piece of timber which lay across it. This piece of timber was a four-by-four approximately three feet long, and apparently was one of the pieces of wood which had been used in shoring the trench while the pipe was being laid. According to the testimony this four-by-four had probably worked itself down through loose dirt and sand until it rested on top of the pipe and exerted the pressure which plaintiff's witnesses say caused the pipe to collapse. According to the specifications furnished by the board, the timber used in shoring should have been removed prior to filling the trench, and the trench should have been backfilled with suitable earth free from any timber or other deleterious matter.

As stated above, the 18 feet of concrete pipe having a diameter of eight inches in which the break occurred had been laid by Southern in a trench 12 feet deep. The trench was then handfilled by Southern for some three or four feet with clam shells and sand. This work was done under the supervision of the board's engineers. At the time the assignment of this construction contract was executed and Zenith took over the job, however, the remaining seven or eight feet above the 18 feet of pipe were unfilled. Zenith removed the shoring and backfilled this remaining depth of the trench with earth which it got from "all over".

After considering the entire record, we are of the opinion that the cause of the break in the sewer pipe has not been established by Zenith, as it is impossible to tell how the four-by-four which Zenith contends broke the pipe got into the trench— whether it was left there by Southern when it handfilled for three feet over the pipe before the assignment, whether it was left there by Zenith later, or whether perhaps it was dumped into the trench by Zenith during the final backfilling process.

If we assume that this piece of timber actually caused the break in the pipe as contended by Zenith, the burden was on Zenith to establish by a preponderance of the evidence that the four-by-four was left in the open trench, or placed there, by Southern prior to the assignment. Zenith has completely failed to discharge this burden, nor has it proved with any certainty that the break in the pipe was caused by defective workmanship on the part of Southern. Under these circumstances plaintiff's suit will be dismissed.

The judgment is reversed, and plaintiff's suit is dismissed at its costs.